W. W. MARSHALL AND DELLA N. MARSHALL, HIS WIFE, *Appellants,* v. HUBERT KRANTZ, *Appellee.*

Division A.

Opinion Filed April 4, 1927.

1. The right of the complainant to dismiss his bill without prejudice at any time before hearing is conceded and when an order of Court must be obtained to effect the dismissal it will ordinarily be made as of course where such dismissal will not operate to the prejudice of other parties.

2. An exception to the rule exists where the defendant has answered the bill and by such answer seeks affirmative relief or files a cross bill the averments of which entitle him to the relief sought by such answer or cross bill. In such case the complainant may not have an order of dismissal.

An Appeal from the Circuit Court for Volusia County; J. J. Dickinson, Judge.

Decree reversed.

*Cooper, Knight, Adair, Cooper & Osborne* and *Sholtz, Green, Daniell & West,* for Appellants;

*Landis, Fish & Hull,* for Appellee.

ELLIS, C. J.—In April, 1921, W. W. Marshall and his wife entered into a contract with W. J. Braddock and his wife for the purchase of certain lots of land in a subdivision known as "Lantana" in Section 26 and Lots 3 and 4 in Section 27, all in Township 15 South, Range 33 East. Of the lots in the "Lantana" subdivision there were among others six numbered respectively from 1 to 6 inclusive in Block 2.

Later in the same month the Marshalls entered into a contract with Hubert Krantz, by the terms of which they agreed to convey to Krantz and in terms did convey to him "all of their right, title, interest and equity in and to all of the land lying east of the Halifax River covered and described by this said agreement for deed between the parties of the first part (the Marshalls) and the said Braddocks." The agreement between the Marshalls and the Braddocks was made a part of the agreement between the Marshalls and Krantz, who expressly agreed to the "conditions and stipulations on the 2nd page of the said agreement for deed between the party of the second part (the Marshalls) and the said Braddocks covering Lots A, B, C, D, E. and F, of the subdivision of Lot 3, Block 1, 'Lantana'; and also Lots 7 and 20; 13 and 14, Block 2, of 'Lantana'." That reference was to a clause in the Braddock agreement whereby it was agreed that the title to those lots was based upon tax deeds and that the Braddocks would bring suits to quiet the title thereto or secure quit-claim deeds; that if the title failed to any lot the Braddocks would reimburse the Marshalls on each lot as to which the title failed.

The Krantz agreement provided that "in consideration of the conveyance above stipulated" he would pay to the Marshalls $25,000.00 in the manner following: "Ten ($10.00) Dollars cash, upon the delivery to the party of the second part (Krantz) a good and sufficient warranty

deed conveying and assuring unto the said party of the
second part a fee simple title, free and clear of all encum-
brances; a promissory note for Twenty-four Hundred and
Ninety ($2,490.00), payable to the order of the parties of
the first part on or before October 20th, A. D. 1921, with
interest after date at the rate of 6 per cent per annum,
payable semi-annually; together with a promissory note,
payable to the order of the parties of the first part on or
before the 15th day of March, A. D. 1924 (nineteen hundred
twenty-four), with interest after date at the rate of 6 per
cent per annum, payable semi-annually; provided the party
of the first part (the Marshalls) receives from the said
Braddocks a good and sufficient warranty deed conveying
a marketable title to the property mentioned in the agree-
ment for deed hereto attached as 'Exhibit A.' (The Brad-
dock-Marshall contract.) Interest on the two promissory
notes herein before mentioned will begin to run from the
date of the acceptance of the deed conveying the property
mentioned in the agreement for deed hereto attached as
Exhibit 'A' by the party of the second part.''

The agreement between the Marshalls and Krantz also
provided that the Marshalls would submit to Krantz a cer-
tified copy of the deed which they were to obtain from the
Braddocks to the property immediately after receiving the
same, together with an ''abstract covering title to said prop-
erty to the date of the deed tendered.'' Upon the happen-
ing of this event Krantz was to order the Merchants Bank
of Daytona within thirty days to deliver to the Marshalls
the two promissory notes mentioned. (The amount of the
second note is later expressly stated in the contract.)
Coupled to this clause was a proviso making the delivery of
the notes conditioned upon the deed from the Braddocks
conveying to the Marshalls a title to the property described

in the agreement in fee simple free and clear of all incumbrances with all taxes paid until December 31, 1920.

It was also agreed that the Marshalls would upon the payment by Krantz of the note for $2,490.00 deliver to him a warranty deed conveying the property described in the agreement and to secure the payment of the second note Krantz should execute a mortgage upon the property for $22,500.00, payable on or before March 15, 1924. It was also agreed that in the event the Braddocks failed to convey to the Marshalls a "clear fee simple title to each of Lots A, B, C, D, E and F, of the sub. of Lot 3, Block 1, 'Lantana'; and also lots 7 and 20, 13 and 14, Block 2 of 'Lantana'," then the Marshalls would credit Krantz with one hundred dollars for each lot which the Braddocks failed "to deliver" to the Marshalls. They agreeing to deliver to Krantz each lot delivered to them by the Braddocks.

The agreement provided that if Krantz failed to make any of the "payments or any part thereof or to perform any of the covenants on his part" to be performed the contract should at the option of the Marshalls be "forfeited and terminated."

It was agreed that payments and acceptance of deed should be "essential parts of this contract, and that all covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties."

In January, 1922, the Marshalls exhibited their bill in chancery against Krantz to declare the contract "forfeited and terminated and therefore null and void." The incidental relief prayed for was that the title to the land be declared to be in W. W. Marshall; that Krantz's interest be declared to be null and void and that he be restrained from asserting title to the land, and for general relief.

The basis of the suit is the existence of the two contracts

734    SUPREME COURT OF FLORIDA.

W. W. Marshall and Della N. Marshall v. H. Krantz—Statement of Case.

and the allegations that in July, 1921, the Marshalls sub-
mitted to Krantz a certified copy of the deed which they
had received from Braddock, together with an abstract of
title to the property to the date of the deed; that Krantz
refused to accept it because it failed to show ''certain in-
struments or matters of record affecting the title to said
land and premises which property should have been in-
cluded in said abstract of title'' and returned it to the Mar-
shalls, who caused the ''omissions to be corrected'' and re-
turned it to Krantz on December 5, 1921; that the deed
from the Braddocks conveyed to the Marshalls a title in
fee simple to the property described in the Krantz con-
tract clear of all incumbrances with all taxes paid to
December 31, 1920, and that they had performed all the
obligations resting upon them under the Krantz contract
as conditions precedent to the relief sought, and on Decem-
ber 2, 1921, notified Krantz that the thirty days' limit
within which he was to deliver the two notes would expire
on January 15, 1922, and that if he failed to perform the
''covenants'' the Marshalls would exercise their option to
''forfeit and terminate the contract of sale''; that Krantz
had refused to deliver the two notes and had only paid
the ten dollars cash payment on the purchase price of the
lots, which the Marshalls were willing to return and had
deposited it with the Clerk of the Court to be disposed of
upon the Court's order.

Krantz answered the bill in April, 1922.   He admitted
the contract with the Marshalls but denied that they had
obtained from the Braddocks a ''clear fee simple title'' to
''Lots 1, 2, 3, 4, 5, and 6 in Block 2 above mentioned, or any
of them.''   (These lots, we conclude from the pleadings, to
be the same as were described in the Marshall-Krantz con-
tract as ''Lots A, B, C, D, E and F of the subdivision of
Lot 3, Block 1, 'Lantana' ''.)   That both abstracts, the one

first delivered and the corrected one, showed that the title to those lots was held by persons other than the Braddocks or Marshalls. There was an averment to the effect that the Marshalls had not "tendered a deed of conveyance of any of the property described in said contract to defendant."

The bill did not allege nor did the contract expressly require a tender of a deed to Krantz for the property which the abstract showed was owned by the Marshalls until Krantz approved the abstract and ordered the bank to deliver the notes to the Marshalls.

The case made by the bill was that Krantz refused to approve the abstract and to order the notes to be delivered. That the Marshalls were not required under the contract to deliver "a good and sufficient warranty deed conveying a fee simple title, free of all incumbrances, to the property described in the agreement for deed hereto attached as Exhibit 'A' '' (the Marshall-Krantz contract) until the "date of payment of the note for twenty-four hundred ninety ($2,490.00) dollars,'' one of the notes to be delivered within thirty days after the approval of the abstract.

The answer averred that Krantz was ready and willing to comply with his part of the contract when the Marshalls conveyed to him the property mentioned and described in the contract by a good and sufficient warranty deed free and clear of all incumbrances with an abstract of title showing a clear and marketable title to said property in the Marshalls in fee simple free and clear of all incumbrances with all taxes paid until the 31st day of December, 1920. That the Marshalls had failed to carry out the contract on their part and declined to convey the property to Krantz by warranty deed and delivering to him a certified contract of the deed from Braddock "conveying to them the said property mentioned in said contract, together with an abstract showing that the deed from the said Braddocks

to complainants conveys to said complainants the title to said property in fee simple free and clear of all encumbrances with all taxes paid until the 31st day of December, A. D. 1920.''

The answer of Krantz was unsound. It set up no defense to the relief sought because its averments were argumentative and double in meaning. Both contracts were made part of the bill of complaint and copies were attached as exhibits. When taken together it will be observed that ample provision was made for an adjustment of the contract price to be paid for the property in the event the Braddocks could not convey lots 1, 2, 3, 4, 5 and 6, in Block 2, referred to in the Krantz contract as Lots A, B, C, D, E and F of the subdivision of Lot 3, Block 1. Yet the language of the answer might just as reasonably have reference only to those lots to which title failed as to all of the property.

It is clear that if Krantz intended to complain of the failure of the Marshalls to show a deed of conveyance from the Braddocks for those lots or an abstract of title showing title in the Marshalls thereto the matter was capable of adjustment under the terms of the agreement when the certified copy of the deed and abstract were delivered.

The answer does not by any reasonable interpretation present the issue that the Marshalls refused to allow any deductions in price on account of the failure of title to these lots.

The answer then proceeded to pray for specific performance of the contract and an injunction against the Marshalls to restrain them from executing a deed of conveyance and making a contract for the sale of the property to any one else. The prayer rested upon the averments of the answer.

On May 1, 1922, the Marshalls filed their motion for leave

to dismiss the bill of complaint. This motion was denied, and the Court order constitutes the basis of the third assignment of error on the appeal which was taken from the final decree rendered after much unnecessary pleading resulting in a record many times larger than needful and briefs both voluminous, diffuse and expletive.

The final decree allowed Krantz specific performance of the contract in so far as the Marshalls were able to perform the same and if they were unable to make a good convey-ance to Lots 1, 2, 3, 4, 5 and 6 they should make an adjust-ment of the contract price on the basis of the contract's terms. The decree set out what those terms were as applied to the particular lots. There was some provision about interest being allowed for part time and disallowed for part time, all of which rested upon pleadings interposed after the motion to dismiss and testimony taken in the case. The decree required the Marshalls to execute a deed of convey-ance to the lands described in the contract omitting the lots mentioned as to which title failed and required Krantz within thirty days thereafter to deposit in the Court's reg-istry the sum of $26,158.28 which represented the balance of the purchase price of the entire property after deducting the allowance of six hundred dollars on the six lots to which title failed and interest on the balance for part of the time. The decree required W. W. Marshall to pay the cost of the proceedings. The appeal was from that decree and all interlocutory orders.

The motion of the Marshalls for leave to dismiss the bill of complaint without prejudice should have been granted. Overruling it was error.

The right of the complainant to dismiss his bill without prejudice at any time before hearing is universally con-ceded and when an order of court must be obtained to effect the dismissal it will ordinarily be made as of course

where such dismissal will not operate to the prejudice of other parties. The general rule is subject to the exception that when the defendant has answered and by such answer seeks affirmative relief or files a cross-bill the averments or allegations of which entitle him to the relief sought by such answer or cross-bill the complainant may not have an order of dismissal. See 21 C. J. 630, 633; Long v. Anderson, 48 Fla. 279, 37 South. Rep. 216, 5 Ann. Cas. 846; Robbins v. Hanbury, 37 Fla. 468, 19 South. Rep. 886. Florida Chancery Jurisprudence, p. 135.

The time had not expired for taking testimony; the cause had not been set down for hearing on the pleadings and the averments of the defendant's answer as stated gave him no right to the affirmative relief sought; therefore, to continue litigation that was needless and against the complainant's desires in the case where the defendant had acquired no rights by his answer and made no showing for the relief he sought, the refusal of the order of dismissal was erroneous.

The decree is reversed with directions to grant the motion for leave to dismiss the bill.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.